UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TREVOR COVERT, | |
| Plaintiff, | Case No. 3:25-cv-00506-DKG |
| v. | **MEMORANDUM DECISION AND ORDER** |
| MEDIA INTERCEPT, INC., | |
| Defendant. | |

**INTRODUCTION**

Before the Court is Defendant's Motion to Dismiss. (Dkt. 9). The motion is fully briefed and at issue. Having reviewed the entire record, the Court finds the facts and legal arguments are adequately presented and that oral argument would not significantly aid its decision-making process, and, therefore, will decide the motions on the record. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons that follow, the Court finds personal jurisdiction is lacking in this District and will order that the case be transferred to the Middle District of Florida.[1]

---

[1] The parties have consented to proceed before a United States Magistrate Judge in this matter pursuant to 28 U.S.C. § 636(c)(1) and Local Civil Rule 72.1(a)(1). (Dkt. 17).

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

This case arises out of Plaintiff Trevor Covert's claims that Defendant Media Intercept, Inc. (Media) failed to pay him commissions and expenses owed following his termination. Covert began working at Media as the Director of Sales in June 2023, and was terminated on or about April 30, 2025. Media is a digital marketing company that is incorporated in Florida with its principal place of business in Orlando, Florida. Covert is a resident of Idaho who performed his work for Media from his home in Idaho.

On September 4, 2025, Covert filed the Complaint in this Court based on diversity jurisdiction, raising state law claims of breach of contract, violation of Idaho Code § 45-617, unjust enrichment, promissory estoppel, and declaratory judgment. (Dkt. 1). On November 24, 2025, Media filed the motion presently before the Court seeking dismissal of the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, for dismissal due to improper venue and the doctrine of forum non conveniens or transfer to the Middle District of Florida. (Dkt. 9, 24).

## LEGAL STANDARD

Personal jurisdiction is the "power of a court to enter judgment against a person." *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007). Under Rule 12(b)(2), a party may file a motion to dismiss based on lack of personal jurisdiction. When opposing such a motion, "the plaintiff bears the burden of establishing that jurisdiction is proper." *Mavrix Photo, Inc. v. Band Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citation omitted). Where, as here, "the defendant's motion is based on written materials rather than an

**MEMORANDUM DECISION AND ORDER - 2**

evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (citation omitted); *see also Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023); *Cox v. Gritman Med. Cntr.*, 2026 WL 738569, (9th Cir. March 16, 2026). The Court may consider other evidence outside of the pleadings such as declarations and affidavits to determine whether it has personal jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

"Uncontroverted allegations in the complaint are taken as true," *Yamashita*, 62 F.4th at 502 (quoting *Mavrix*, 647 F.3d at 1223 (cleaned up)), and all genuine disputes are resolved in the plaintiff's favor, *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022). However, the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," and the "plaintiff cannot simply rest on the bare allegations of its complaint" in the face of a contradictory affidavit. *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978 (9th Cir. 2021) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)); *see also Yamashita*, 62 F.4th at 502. Where both parties submit conflicting affidavits, the Court must resolve controverted allegations in the plaintiff's favor. *Mavrix*, 647 F.3d at 1223.

## ANALYSIS

### 1. Personal Jurisdiction

Where, as here, there is no applicable federal statute governing the assertion of personal jurisdiction over an out-of-state defendant, the district court applies the law of the forum state in which it sits. *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (citing Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l,*

MEMORANDUM DECISION AND ORDER - 3

*L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998)). Still, the assertion of personal jurisdiction under the law of the forum state must be consistent with the Due Process Clause. *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945); *Doe v. Deutsche Lufthansa*, 157 F.4th 1103, 1109 (9th Cir. 2025). "Idaho's long-arm statute authorizes the exercise of 'all the jurisdiction available to the State of Idaho under the due process clause of the United States Constitution.'" *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1161 (9th Cir. 2023) (quoting *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (citing *Doggett v. Elecs. Corp. of Am.*, 454 P.2d 63,67 (1969) and Idaho Code § 5-514)). Thus, personal jurisdiction under state law and federal due process are coextensive.

The exercise of personal jurisdiction over a defendant complies with due process "only if [the defendant] has certain minimum contacts with the relevant forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Yahoo!*, 433 F.3d at 1205; *see also Int'l Shoe Co.*, 326 U.S. at 316. There are two kinds of personal jurisdiction: general and specific. *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S.Ct. 1017, 1024 (2021). Here, Covert seeks to invoke only specific personal jurisdiction. (Dkt. 16).

"Specific jurisdiction exists when a case arises out of or relates to the defendant's contacts with the forum." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1171 (9th Cir. 2022) (brackets, quotation marks, and citation omitted). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571

MEMORANDUM DECISION AND ORDER - 4

U.S. 277, 283-284 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)); *see also Ford*, 592 U.S. at 365 (The "essential function" of specific jurisdiction is a strong "relationship among the defendant, the forum, and the litigation."). "[T]he relationship must arise out of contacts that the 'defendant [itself]' creates with the forum State," not "with persons who reside there." *Walden*, 571 U.S. at 284-286 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Due process requires that a defendant be haled into court in a forum State based on [its] own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts [it] makes by interacting with other persons affiliated with the State." *Id.* at 286 (citing *Burger King*, 471 U.S. at 475). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [it] to the forum in a meaningful way." *Id.* at 290

To determine whether the exercise of specific jurisdiction over a nonresident defendant is appropriate, the Ninth Circuit applies a three-part test: (1) the non-resident defendant must have sufficient minimum contacts with the forum; (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750-751 (9th Cir. 2025) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)); *see also Cox*, 2026 WL 738569 at *5. The plaintiff bears the burden on the first two prongs; and "the burden then shifts to the defendant to 'present a compelling case' that the exercise of

MEMORANDUM DECISION AND ORDER - 5

jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 476-78).

Under the first part of the test, "to be subject to specific jurisdiction the defendant must purposefully direct its activities toward the forum state, purposefully avail itself of the privileges of conducting activities there, or engage in 'some combination thereof.'" *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1088 (9th Cir. 2023) (quoting *Yahoo!*, 433 F.3d at 1206); *see also Cox*, 2026 WL 738569, at *5. "When a defendant's conduct primarily occurs outside the forum state, we generally apply the purposeful direction test and look to whether the defendant expressly aimed acts at the forum state knowing that they would harm the plaintiff there." *Impossible Foods*, 80 F.4th at 1088. Purposeful availment, on the other hand, "is satisfied when 'the defendant has taken deliberate action within the forum state or ... has created continuing obligations to forum residents.'" *Id.* (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)).

These two concepts are distinct and often, but not always, turn on the nature of the underlying claim. *Id.* at 1088-1089 (recognizing that typically purposeful direction applies to tort claims while purposeful availment applies to contract claims, but that this is not an "iron-clad" distinction applicable in every case); *Doe*, 157 F.4th at 1111; *Davis*, 71 F.4th at 1162. "At the end of the day, the purposeful direction and availment tests simply frame our inquiry into the defendant's 'purposefulness' vis-à-vis the forum state, ensuring that defendants are not 'haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.'" *Impossible Foods*, 80 F.4th at 1089 (quoting *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101,

**MEMORANDUM DECISION AND ORDER - 6**

1107 (9th Cir. 2020) (quoting *Burger King*, 471 U.S. at 475); *see also Walden*, 571 U.S. at 284–85 (emphasizing that "minimum contacts" requires that the defendant create "contacts with the forum State itself" and not merely "contacts [the defendant] makes by interacting with other persons affiliated with the State").

Here, the claims in the Complaint are contract based and the parties' arguments center on purposeful availment, although Plaintiff briefly mentions purposeful direction. (Dkt. 1, 9, 16, 24). The Court will therefore analyze personal jurisdiction under the purposeful availment test, while remaining mindful that the inquiry ultimately looks to the Defendant's purposeful contacts with the forum state. *Impossible Foods*, 80 F.4th at 1089; *see also Walden*, 571 U.S. at 284–85.[2]

Covert is an individual residing in the forum state (Idaho). Media is a Florida corporation with its principal place of business in Orlando, Florida. Covert alleges the contacts establishing specific personal jurisdiction are that the acts giving rise to the claims occurred in Idaho, Media was doing business in Idaho, Covert worked as an employee of Media while located in Idaho, and Media hired and fired Covert in Idaho. (Dkt. 1 at ¶ 4). Covert's primary bases for asserting specific personal jurisdiction over Media are that he worked from Idaho while employed by Media, Media defended against Covert's Idaho unemployment claim, and a business relationship between Media and an

---

[2] Even under the purposeful direction test, the outcome is the same. Media did not expressly aim its actions at the forum state such that it can be said that Media's conduct connects it to the forum in a meaningful way. *Schwarzenegger*, 374 F.3d at 803 (applying the *Calder* effects test); *Walden*, 571 U.S. at 290 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [it] to the forum in a meaningful way."). That Media knew Covert resided in Idaho when it fired him and that Covert would suffer the effects of the termination in Idaho is not sufficient. *Van Hook v. Crete Carrier Corp.*, 2025 WL 1643098, at *4 (D. Idaho June 10, 2025).

MEMORANDUM DECISION AND ORDER - 7

Idaho-based company, Kit, Inc. (Dkt. 16). Covert filed a declaration stating that Media knew he was an Idaho resident when they hired him and that he would be performing all of his work, other than travel, from Idaho. (Dkt. 16-2 at ¶¶ 7, 15). Covert notes that Media electronically sent his employment agreement and paid wages to him in Idaho. Covert argues that Media controlled his work hours, pay, benefits, and had "significant control over the means, methods, and tools I used to perform my work." (Dkt. 16-2 at ¶¶ 16-30, 32). The Court finds as follows.

The parties dispute whether Covert was an employee or an independent contractor, with both submitting testimonial evidence in support of their positions. (Dkt. 16, 24). Under the Rule 12(b)(1) standard, this dispute is resolved in favor of Plaintiff and, therefore, the Court will presume that Covert was an employee of Media for purposes of this motion. *Mavrix*, 647 F.3d at 1223. However, Covert's status as an employee rather than an independent contractor does not establish personal jurisdiction in Idaho over Media given the circumstances of this case, as discussed below.

It is undisputed that Media's sole office is located in Orlando, Florida; Covert was hired as a sales consultant to service clients and to retain new business, neither of which – Media's clients or business - were located in Idaho; and the employment agreement, payroll, and records of Covert's sales were initiated from and are located in Florida. (Dkt. 9-1). Further, Media does not advertise or market its business in Idaho; is not registered or licensed to do business in Idaho; has never paid taxes on profits earned in Idaho; owns no property in Idaho; has no agent or clients; has no employees in Idaho since firing Covert; and has no bank accounts in Idaho. (Dkt. 9-1). Media did not provide Covert with

**MEMORANDUM DECISION AND ORDER - 8**

workers' compensation coverage and did not withhold payroll taxes for Covert. (Dkt 24-1). Further, the manager Covert reported to was based out of Florida. (Dkt. 16-2 at ¶ 31).

Resolving controverted allegations in Covert's favor and taking Covert's allegations as true, and considering the undisputed facts in Media's submissions, the Court finds specific personal jurisdiction over Media is lacking in this District. The central fact Covert relies on to establish specific personal jurisdiction is his being located in Idaho while employed by Media. However, "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. Covert could have been located anywhere while working for Media. That Covert chose to work from Idaho does not demonstrate that Media purposefully availed itself of the privilege of conducting business in Idaho. Nor do the facts that Media hired Covert knowing he resided in Idaho, would be performing his job while located in Idaho, would be paid wages in Idaho, and was terminated while in Idaho, establish the requisite minimum contacts needed to exercise specific personal jurisdiction over Media.

While Covert's presence in Idaho is relevant, the "[m]ere foreseeability that an action will cause an injury in the forum is insufficient to find minimum contacts." *Cox*, 2026 WL 738569, at *5 (citing *Burger King*, 471 U.S. at 474). Again, the jurisdictional minimum contacts must arise out of the <u>defendant's</u> <u>contacts</u> with the forum and the litigation, not the person who resides there. *Walden*, 571 U.S. at 284-285. A plaintiff's connection with the forum—or defendant's knowledge of such connection—is insufficient to establish purposeful availment. *See e.g. Alliant, LLC v. McCoy*, 2026 WL 18808, at *7-8 (D. Idaho Jan. 2, 2026) (finding the remote employee of an Idaho business

**MEMORANDUM DECISION AND ORDER - 9**

had not purposefully availed himself of the privilege of conducting activities in Idaho under the facts of the case and, therefore, was not subject to personal jurisdiction in Idaho). Covert's presence in Idaho, and Media's knowledge of the same, therefore do not constitute minimum contacts between Media and the forum-state for purposes of specific personal jurisdiction.

Further, Media's underlying employment relationship with Covert does not support exercising personal jurisdiction. Media's acts of hiring and firing an Idaho-based individual, which included paying wages and some travel expenses, and providing standard benefits, simply do not evidence that Media purposefully availed itself of the privilege of conducting activities in Idaho. Particularly given Covert's work for Media did not involve any clients or business in Idaho and Media never marketed its business activities to Idaho. Rather, the record shows that, other than Covert being located in Idaho while employed by Media, Media had no presence in or relevant contacts with Idaho, let alone contacts showing that it had purposefully availed itself of the privilege of conducting business in Idaho.

Covert's reliance on Idaho statutes governing worker's compensation, labor, employment, and income tax are misplaced and do not evidence that Media's actions invoked the benefits and protections of Idaho laws. Media did not withhold taxes from Covert's paycheck and did not provide workers' compensation coverage to Covert. The fact that Media participated in the unemployment claim in front of the Idaho Department of Labor does also not evidence that Media took actions availing itself of Idaho's laws or the benefits of doing business in Idaho. Media did not seek out any ruling by the Idaho

MEMORANDUM DECISION AND ORDER - 10

Department of Labor against Covert. Rather, Covert filed the unemployment claim and sought to obtain benefits from Idaho's Department of Labor. The only reason Media appeared in the Idaho Department of Labor proceeding was to respond to Covert's claim. Media's participation in the unemployment proceeding does not constitute purposeful availment because it did not initiate that action or otherwise seek to avail itself of the benefits of the forum state through that proceeding – Media was simply responding to the unemployment claim filed by Covert.

Covert contends that when he filed for unemployment with the State of Idaho, Media never claimed it was not an employer subject to unemployment and that the central issue on the claim was Media's business relationship with Kit, Inc., an entity located in Idaho. (Dkt. 16-2 at ¶¶ 39-42). However, neither of those arguments establish the requisite minimum contacts. As discussed above, Media's response and participation in the unemployment claim proceedings was due to Covert's actions, not the actions of Media. That Media did not deny having employed Covert in the unemployment proceeding is not evidence of purposeful availment.

Media's dealings with Kit, Inc., an Idaho-based company, also do not establish a basis for asserting specific personal jurisdiction. *Walden*, 571 U.S. at 286. Media's business interactions with Kit, Inc. were isolated and incidental to Media's marketing operations outside of Idaho. (Dkt. 24-1 at ¶ 3). Media has never developed a product directed at Idaho, never targeted Idaho markets, never solicited or obtained Idaho customers, and never structured its business to operate under Idaho law. (Dkt. 24-1 at ¶ 4). The Court finds that Media's isolated contacts with Kit, Inc. to market its business

MEMORANDUM DECISION AND ORDER - 11

outside of Idaho do not constitute purposeful availment with the forum. Notably, Covert has not asserted that general personal jurisdiction applies. (Dkt. 16).

More importantly, Media's interactions with Kit, Inc. are unrelated and irrelevant to Covert's claims asserted in this litigation for unpaid wages, commissions, and expenses. (Dkt. 1). Kit, Inc. is mentioned in the decision denying unemployment benefits only due to the fact that one of its employees was involved in the circumstances underlying the reason for Covert's termination of employment. (Dkt. 9-2). However, none of Covert's claims contest the termination of his employment or the denial of unemployment benefits. Therefore, Media's unrelated business dealings with Kit, Inc. do not constitute forum-related contacts giving rise to the claims as necessary to assert specific personal jurisdiction over Media this litigation. *Walden*, 571 U.S. at 286.

The case relied on by Covert, *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.3d 1392, 1397 (9th Cir. 1986), is inapposite. (Dkt. 16 at 10-11). In *Haisten*, the defendant was an insurance fund incorporated and physically located in the Cayman Islands. The fund provided indemnity insurance for doctors located at a hospital in California, but was carefully structured to deliberately avoid California insurance regulations. The Ninth Circuit looked at the "economic reality" of the defendant-insurer's activities and concluded that it had purposefully directed its activities toward California, despite the fact that it had no physical contacts with the forum state, and, therefore, the district court had properly exercised personal jurisdiction over the foreign defendant-insurer in California. The facts and circumstances of this case are vastly different.

**MEMORANDUM DECISION AND ORDER - 12**

Unlike the defendant in *Haisten*, Media has not directed its business activities into Idaho, availed itself of the benefits of doing business in Idaho, or subjected itself to Idaho's laws. As discussed herein, Media has no clients in Idaho, has no presence in Idaho aside from when Covert worked for Media, and does not market its business in Idaho. None of the contacts between Media and Idaho alleged by Covert were based on actions initiated by Media. Media's hiring and termination of Covert while he resided in Idaho, do not establish specific personal jurisdiction. Media's participation in the unemployment claim was in response to Covert's filing of the claim, not due to Media's own actions. Media's separate business dealings with Kit, Inc. are unrelated to Covert's wage claims.

Based on the foregoing, the Court finds Covert has not made a prima facie showing that Media availed itself of the benefits of Idaho's forum or directed its actions toward Idaho and, therefore, has failed to establish that Media has sufficient minimum contacts with Idaho as needed to exercise specific personal jurisdiction over Media. *Schwarzenegger*, 374 F.3d at 802 (holding plaintiff bears the burden to establish the first two steps of the analysis). Accordingly, the Court need not more fully or separately address the remaining steps of the test (relatedness and reasonableness). *See Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) ("If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law.") (citation omitted). In any event, the second and third steps of the analysis also support finding that personal jurisdiction is lacking because the claims do not arise out of or relate to Media's forum

**MEMORANDUM DECISION AND ORDER - 13**

contacts and exercising jurisdiction over Media in Idaho would be unreasonable. For these reasons, the Court finds that it does not have specific personal jurisdiction over Media and, therefore, cannot hear Covert's claims.

### 2. Transfer of Action

Where jurisdiction is lacking, the Court must consider whether the case should be dismissed or transferred to a court properly having jurisdiction:

> Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court ... in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631; *see also Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (encouraging courts to consider sua sponte whether a case should be transferred under Section 1631). This statute "confers on [a federal court] authority to make a single decision upon concluding that it lacks jurisdiction – whether to dismiss the case or, 'in the interest of justice,' to transfer it to a court of appeals that has jurisdiction." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988).[3]

Normally, transferring a case to a court where the suit could have originally be brought will be in the interest of justice because dismissal of an action that could be

---

[3] There is a circuit split concerning whether § 1631 applies to transfers where personal jurisdiction is lacking. *See Tisher v. Boeing Co.*, 2026 WL 982883, at *12-13 (D. Or. April 13, 2026); *Asbury v. Stout*, 2025 WL 1906707, at *10 n. 9 (M.D. Fla. July 10, 2025). The Court finds instructive and is in agreement with the reasoning of the caselaw concluding the lack of personal jurisdiction is a proper basis for transfers under § 1631. *Id.*; *Alliant*, 2026 WL 18808, at *11 (considering whether to transfer a case under § 1631 where personal jurisdiction was lacking); *Lewis v. Abbot Labs., Inc.*, 2020 WL 631595, at *10 (M.D. Fla. Feb. 5, 2020) *recommendation adopted by* 2020 WL 998717 (M.D. Fla. March 2, 2020).

brought elsewhere is "time-consuming and justice-defeating." *Amity Rubberized Pen Co. v. Market Quest Grp., Inc.*, 793 F.3d 991, 996 (9th Cir. 2015) (quoting *Miller*, 905 F.2d at 262). Such is the case here. The Court finds that the interest of justice warrants transferring the case to the Middle District of Florida to allow Covert an opportunity to pursue his claims on their merits in the proper jurisdiction, rather than dismissal.

## ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Motion to Dismiss (Dkt. 9) is **GRANTED IN PART AND DENIED IN PART**. The Motion is granted to the extent that the Court concludes it lacks specific personal jurisdiction over Defendant Media Intercept Inc., and denied to the extent the Court elects to transfer the case under 28 U.S.C. § 1631 rather than dismiss the action.

The Clerk of the Court is **DIRECTED** to **TRANSFER** this case to the United States District Court for the Middle District of Florida, Orlando Division.

DATED: April 24, 2026

Honorable Debora K. Grasham
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 15**